UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SMITH A. CARDIN,
    Plaintiff,

    v.                                     C.A. No. 13-170-ML

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,
    Defendant.


**MEMORANDUM AND ORDER**

    MARY M. LISI, District Judge.

    The plaintiff in this case (the "Plaintiff") seeks a reversal of a disability determination by the Commissioner of Social Security (the "Defendant"), pursuant to which the Plaintiff's fifth application for Social Security Disability Insurance benefits ("DIB") and Supplemental Security Income benefits("SSI") was denied. The matter is before the Court on the Plaintiff's objection (Dkt. No. 14) to a Report and Recommendation ("R&R") issued by a Magistrate Judge on March 27, 2014 (Dkt. No. 13). The Plaintiff objects to the recommendation that her motion to reverse the decision of the Commissioner be denied and that the Defendant's motion to affirm the decision be granted. R&R at 32. The Plaintiff raised no objection to the Magistrate Judge's finding that this Court has no jurisdiction to review the refusal by the

1

Administrative Law Judge ("ALJ") to reopen the Plaintiff's four prior applications.[1] R&R at 2. The Defendant has submitted a sur-reply to the Defendant's objection to the R&R (Dkt. No. 16).

**I. Standards of Review**

In considering a party's objection to an R&R on a Social Security appeal, more than one standard of review comes into play. First, "when a magistrate judge passes upon a dispositive motion, he or she may only issue a recommended decision, and if there is a timely objection, the district judge must engage in de novo review." PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 14 (1st Cir. 2010). Pursuant to 28 U.S.C. § 636, this Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.; Fed. R. Civ. P. 72(b)(3).

Secondly, the Court's "judicial review of a Social Security claim is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). Although questions of law are reviewed *de novo*, the Court

---

[1] The Plaintiff's request to reopen her prior four applications was limited to a statement by her counsel at the September 6, 2011 hearing before the ALJ that the Plaintiff had "a mental illness that prevented her from following through on everything." Tr. 33.

2

must "defer to the Commissioner's findings of fact so long as they are supported by substantial evidence." Id. The determination of substantiality is made "upon an evaluation of the record as a whole." Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(citing Ortiz v. Sec'y of Health and Human Serv., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the Secretary's findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."). Moreover, the Court "must avoid reinterpreting the evidence or otherwise substituting its own judgment for that of the Commissioner." Brown v. Apfel, 71 F. Supp.2d at 30-31 (citing Colon v. Sec'y of Health and Human Serv., 877 F.2d 148, 153 (1st Cir. 1989)).

If the Commissioner's decision is supported by substantial evidence in the record, the decision must be confirmed "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y of Health and Human Serv., 819 F.2d 1, 3 (1st Cir. 1997)(per curiam), *cert. denied*, 484 U.S. 1012, 108 S.Ct. 713, 98 L.Ed.2d 663 (1988) (citing Lizotte v. Sec'y of Health and Human Serv., 654 F.2d 127, 128 (1st Cir.1981)); Vazquez-Rosario v. Barnhart, 149 Fed. Appx. 8, 10 (1st Cir. 2005)(noting that "[i]t is the ALJ's prerogative to resolve conflicting evidence.") Although the ALJ may not "ignore medical evidence and substitute his own views for uncontroverted medical opinion," Nguyen v. Chater, 172

3

F.3d 31, 34 (1st Cir.1999) (per curiam), the Commissioner's findings of fact, if adequately supported, are conclusive. Brown v. Apfel, 71 F. Supp.2d at 30.

## II. Factual Background and Procedural History

The background facts and travel of the case have been set forth in thorough detail in the R&R; therefore, only a brief summary of the most pertinent facts and events will be summarized herein. At the time the R&R was issued, Plaintiff was a 41-year old female who has alleged various mental impairments, including major depressive disorder, general anxiety disorder, panic disorder, possible personality disorder, as well as HIV positive status and a number of physical impairments. On October 23, 2009, after the Plaintiff's four prior applications for DIB and SSI had been denied–the last one on August 18, 2008 (Tr. 17-18)–she filed a fifth application for DIB and SSI. Tr. 15. Her fifth application was denied on February 15, 2010 and, on reconsideration, denied again on August 3, 2010. Id. Upon the Plaintiff's request, the ALJ conducted a hearing on the Plaintiff's fifth application on September 6, 2011. Id. The Plaintiff was represented by counsel who also represented her during her third and fourth applications.

In her October 23, 2009 application, the Plaintiff claimed that she had been unable to work because of disabling conditions since September 20, 2004, when she was hospitalized for nine days at Butler Hospital for a mental "breakdown." Tr. 15, 155, 351. The

4

Plaintiff alleged that she was limited in her ability to work because of anxiety disorder, depression, fatigue related to restless leg syndrome and HIV medication, as well as arm, hand, and foot pain. Tr. 163. At the time of the September 6, 2011 hearing, the Plaintiff was living with her fiancé and 11-year old son, who has been diagnosed with autism and receives disability benefits. Tr. 19.

According to the Plaintiff's testimony at the hearing, she attended college for some time, obtained an EMT certificate, and held a special drivers license. Tr. 35. For a while, she worked as a limo driver until she had an altercation with the owner of the company. Tr. 36. The Plaintiff also related that she had difficulties handling stress and getting along with co-workers and supervisors. Tr. 41. Over a fifteen-year period, she held a number of other part-time jobs, at least three of which ended in termination after disagreements with her respective supervisors. Tr. 51-52. During her September 2004 hospitalization, the Plaintiff expressed that she was working part-time so she could take care of her son. Tr. 21-22, 351.

The Plaintiff also stated at the hearing that she was able to stand comfortably only for twenty minutes, lift less than ten pounds, had problems with her dominant right hand, and would have difficulties performing repetitive pushing or pulling of arm or leg controls. Tr. 37-41. She acknowledged, however, that she did not

5

require help bathing and dressing. It was unclear how long she could walk or whether she could reach above her shoulders, as she reported that she did not walk anywhere and did not try to reach up. Id. Based on the evidence presented to him, the ALJ concluded that the Plaintiff's "medically determinable impairments could not reasonably be expected to cause the alleged symptoms to the degree alleged" and he found the Plaintiff's statements regarding the severity of the symptoms not credible. Tr. 20.

Regarding the Plaintiff's alleged mental impairments, the ALJ referred in his written opinion to Plaintiff's psychiatric admission to Butler in September 2004; a neuropsychological evaluation by treating psychologist Jack Demick, PhD., on August 25, 2005; Dr. Demick's mental residual functional capacity ("RFC") questionnaire from February 20, 2006; a July 10, 2008 assessment by Louis Turchetta, EdD, an impartial medical examiner; a June 28, 2010 RFC evaluation by Brian Hickey, RN, of West Bay Psychiatric Associates; and an August 17, 2011 assessment by Danielle DeSantis, PsyD. Tr. 22-23.

The ALJ noted that, after the Plaintiff was psychiatrically hospitalized at Butler, she was quickly stabilized and discharged and that Plaintiff's symptoms have been consistently managed with medication. Tr. at 22. The ALJ pointed out that, although Dr. Demick opined that the Plaintiff's mental impairments precluded her from working with others or sustaining a normal work schedule,

those identified limitations were not accepted by reviewing state agency physicians. Id. The ALJ also noted that both Dr. Demick's and Dr. Turchetta's GAF [Global Assessment of Functioning] assessments indicated that the Plaintiff had moderate limitations only.[2] Id.

The Plaintiff's treatment record from West Bay Psychiatric Associates demonstrated that her mental impairment was stabilized with medication; it was also noted that there were large gaps in the Plaintiff's treatment, including a period of no treatment between January and June 2010 (which the Plaintiff attributed to a lack of insurance). Id. The ALJ noted that, as a non-physician, Nurse Hickey was not an accepted medical source for opinion evidence. However, the ALJ's declining to give Nurse Hickey's assessment any significant probative value was based primarily on the grounds that the assessment was not supported by the medical record; that the Plaintiff was off her medication in June 2010; and that her subsequent four visits reflected no comprehensive mental status examinations. Tr. at 23. Nurse Hickey's treatment notes from December 2010 also reflected that the Plaintiff was clinically stable and he assessed her with only a mild impairment. Id.

After the December 2010 assessment, the Plaintiff did not seek

---

[2] It is undisputed that the Commissioner advised adjudicators in 2013 that GAF scores are not dispositive on the issue of disability. The ALJ's decision in this case was rendered in 2011, before the Commissioner's decision on this issue.

treatment until June 20, 2011. Although Dr. DeSantis opined on August 17, 2011 that the Plaintiff was significantly more limited than the ALJ concluded, the ALJ noted that no documents were submitted regarding any treatment that the Plaintiff may have received; Dr. DeSantis's assessment was based entirely on the Plaintiff's allegations; and the only record of treatment was a brief intake evaluation.

In contrast to the functional limitations alleged by the Plaintiff, the record reviewed by the ALJ revealed that the Plaintiff was far more engaged in "activities of daily living" than she asserted. Tr. 23-24. *Inter alia*, the Plaintiff was able to care for her own needs and those of her son; she met and became engaged to her fiancé in 2008; she did perform at least some household chores; and, although she prefers to be at home rather than involved in social activities, she did testify that she was socially active with friends and her fiancé. Tr. 24.

After considering the evidence, the testimony by the Plaintiff, and the examination of a vocational expert (who was cross-examined by Plaintiff's counsel at the hearing), the ALJ concluded that (1) the August 18, 2008 determination remained administratively final because there was "no new and material evidence or other appropriate basis to justify reopening and revising" the denial of the Plaintiff's prior applications, Tr. 17-18; and (2) the Plaintiff has not been under a disability, as

8

defined in the Social Security Act, because (a) she "does not have an impairment or combination of impairments that meets or medically equals, the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)," and (b) she had "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b and 416.967(b)." Tr. 18, 26.

On appeal from the ALJ's decision, the Plaintiff relied primarily on her alleged severe mental illnesses as the basis for her claims. Pltf.'s Mem. Mot. Reversal at 4 (Dkt. No. 9-1). In her objection to the R&R, the Plaintiff does not address the Magistrate Judge's determination that this Court has no jurisdiction to review the ALJ's denial of reopening the Plaintiffs' prior applications. Accordingly, the prior determination that the Plaintiff was not disabled between September 20, 2004 and August 18, 2008 is *res judicata*. 20 C.F.R. § 404.957(c)(1).

Contrary to the Plaintiff's assertions in her motion to reverse the Commissioner's decision and in her appeal from the Magistrate Judge's R&R, the record reveals that the ALJ did not "unfairly and unsustainably" reject the two treating psychologists' opinions. Pltf.'s Obj. at 2 (Dkt. No. 14). With respect to Dr. Demick's 2006 assessment, the ALJ concluded that Dr. Demick's treatment notes were inconsistent with the doctor's opinion regarding the severity of the Plaintiff's impairment. Moreover,

9

subsequent diagnostic testing by Dr. Turchetta indicated that the Plaintiff's prognosis depended on the Plaintiff's maintaining a comprehensive treatment approach to address her depression and anxiety, Tr. 656, a conclusion which is borne out by the record overall.

With regard to Dr. DeSantis's opinion, it was clear from the evidence submitted to the ALJ that the Plaintiff had just begun treating with Dr. DeSantis after a six-months gap in mental health treatment. Documentation was limited to a June 20, 2011 intake form, Tr. 818-822, and an August 17, 2011 mental RFC questionnaire, according to which the Plaintiff had participated in weekly sessions[3] since her first intake. Tr. 823-827. No treatment notes or other documentation was submitted and, as the ALJ correctly pointed out, the RFC questionnaire appears to be based primarily, if not solely, on the Plaintiff's self-reporting of her experience.

When reviewed against the entire record, the ALJ's ultimate determination regarding the Plaintiff's disability and his decision to give little weight to the opinions of Dr. Demick and Dr. DeSantis were supported by substantial evidence. Although the Plaintiff's mental health history indicates that she has received treatment for depression for many years, her medical records also

---

[3]
It is unstated whether the therapist referenced in the RFC form is Dr. DeSantis. The form also states that the Plaintiff "will see [a] nurse practitioner (Maureen) for med maintenance" on August 23 for a first visit. Tr. 823.

10

reveal that her symptoms were consistently managed with medication. According to the Plaintiff's testimony, she was able to hold down a number of jobs, provide care for her son, and engage in social activities. Based on a review of the record, the Court concludes that the ALJ's decision to give little weight to the opinion of Dr. Demick, Dr. DeSantis, and Nurse Hickey was well-reasoned and the ALJ's ultimate conclusion that the Plaintiff has not been under a disability as defined by the Social Security Act was supported by substantial evidence.

## Conclusion

For the reasons stated herein, the Commissioner's decision is AFFIRMED and the Plaintiff's motion to reverse is DENIED.


SO ORDERED.

/s/ Mary M. Lisi

Mary M. Lisi
United States District Judge

June 5, 2014